Arthur C. UNDERWOOD, as Assignee of Consolidated Computer Systems, Inc., a Colorado corporation, Plaintiff–Appellant and Cross–Appellee,

v.

DILLON COMPANIES, INC., d/b/a King Soopers, Inc., Defendant–Appellee and Cross–Appellant.

No. 96CA0062.

Colorado Court of Appeals, Div. II.

March 6, 1997.

Terry, Syke & Graham, P.C., Dennis A. Graham, Denver, for Plaintiff–Appellant and Cross–Appellee.

Long & Jaudon, P.C., Stephen Hopkins, Ellen Rubright Ivy, Denver, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge TAUBMAN.

In this conversion case, plaintiff, Arthur C. Underwood, appeals from a judgment entered on a jury verdict in favor of defendant, Dillon Companies, Inc., d/b/a/ King Soopers, Inc. (King Soopers). Underwood asserts that the jury instructions concerning King Soopers' liability for refusal to return bailed goods were incorrect. King Soopers cross-appeals the amount awarded for its expert witness fees. We find no error in either the jury instructions or the award of expert witness fees and affirm the judgment.

King Soopers leased 24 computers under a lease that subsequently was assigned to Underwood. As relevant here, the lease stated that: "[King Soopers] may elect to return the systems after 12 months, at no additional cost, provided that the systems are physically undamaged (normal wear and tear will not be considered a physical damage)."

When King Soopers notified Underwood that it wished to terminate the lease and return the computers, Underwood informed King Soopers that he would accept the computers on a conditional basis for 30 days subject to examination and testing by an independent computer technician to determine the condition of the computers before delivery would be considered unconditionally accepted. Underwood further stated that 30 days after conditional acceptance of the computers, if the computers were in good working order, the lease would be terminated as to those computers appropriately packaged in their containers, with no physical damage, and in good working order.

Because King Soopers did not agree to these terms, it informed Underwood that it would release the computers only on an "as is" basis. Also, apparently in response to Underwood's redelivery conditions, King Soopers requested that Underwood release it from all liability upon his removal of the computers from King Soopers' premises. Underwood accepted and released King Soopers from liability for five computers after inspection by an independent technician.

After the parties could not agree on terms for redelivery of the remaining computers, Underwood brought an action for breach of contract, conversion, and bailment under contract. The case went to the jury on the conversion claim only, and the jury found in favor of King Soopers.

## I.

### A.

Underwood contends that the trial court erred in instructing the jury that King Soopers would not be liable for conversion if it had a reasonable justification to refuse to return the computers. We disagree.

■ Conversion is a distinct unauthorized act of dominion or ownership exercised by one person over personal property belonging to another. *Glenn Arms Associates v. Century Mortgage & Investment Corp.,* 680 P.2d 1315 (Colo.App.1984). A bailee who wrongfully withholds bailed goods may be liable to the bailor for conversion. *See Montano v. Land Title Guarantee Co.,* 778 P.2d 328 (Colo.App.1989).

■ If a qualified right of refusal to return the goods is asserted in good faith and in recognition of the rights of the owner of the property, such constitutes a defense to a claim of conversion. *Glenn Arms Associates v. Century Mortgage & Investment Corp., supra.* Similarly, a bailee who imposes reasonable conditions on the return of the bailed property will not be liable for conversion. *Sgro v. Getty Petroleum Corp.,* 854 F.Supp. 1164 (D.N.J.1994)(applying New Jersey law).

■ A bailee may refuse to surrender an item of personal property in order to investigate the bailor's rights to return of the property if the bailee distinctly communicates the reason for the qualified refusal to the bailor. *See Schlittenhardt v. Bernasky,* 147 Colo. 601, 364 P.2d 586 (1961) (conditions that qualify refusal to return chattel must have legal foundation or rest on reasonable doubt as to the validity of bailor's claim or as to bailee's duty under the circumstances); Restatement (Second) of Torts §§ 240(1) and 241 (1965).

■ Whether a qualified refusal to return a chattel is reasonable is ordinarily a question for the jury. *See Scott Paper Co. v. Novay Cherry Barge Service, Inc.,* 48 Ala. App. 368, 265 So.2d 150 (1972).

■ Here, instructions 11 and 12 directed the jury as follows:

As the bailee of the plaintiff's property, the defendant cannot refuse to redeliver the property to the plaintiff without reasonable justification. If you find that the defendant agreed to return the plaintiff's property on conditions which are unreasonable, then you must find that the defendant has converted the plaintiff's property and you must find for the plaintiff on his claim of conversion.

The defendant ... is not legally responsible to the plaintiff ... on plaintiff's conversion claims if the defense of a qualified right of refusal to return the property is proved. This defense is proved if you find the defendant, in good faith and in recognition of plaintiff's rights in the property, refused to return the plaintiff's property under conditions which rendered the refusal reasonable.

In approving these instructions, the trial court followed the Restatement (Second) of Torts § 237 (1965), which provides:

One in possession of a chattel as bailee or otherwise who, on demand, refuses without proper qualification to surrender it to another entitled to its immediate possession, is subject to liability for conversion.

Restatement § 237 comment b instructs that the section should be read together with Restatement (Second) of Torts §§ 238 through 241 (1965). Restatement § 238 provides:

One in the possession of chattel does not become a converter by making a qualified refusal immediately to surrender the chattel when the circumstances are such that the demand for immediate surrender is unreasonable.

Restatement § 238 comment a defines a qualified refusal as:

One which does not negative a willingness to surrender the chattel under circumstances other than those existing at the

time. If the circumstances are such as to make it reasonable to refuse to surrender the chattel at the moment, the actor is privileged to make such a refusal. Thus, if it is impossible or excessively inconvenient or expensive to make an immediate surrender, a qualified refusal is privileged under this Section.

■ A trial court may apply sections of the Restatements as a formulation of the law applicable to the issues before the court. *Grease Monkey International, Inc. v. Montoya*, 904 P.2d 468 (Colo.1995). Instructions 11 and 12 are consistent with the law as set forth in the Restatement. Furthermore, instruction 12 tracks the rule set forth in *Glenn Arms Associates v. Century Mortgage & Investment, supra*, regarding an appropriate defense to conversion.

■ Here, the evidence presented supported the giving of these instructions. King Soopers advised Underwood that it had refused to return the computers because of Underwood's indicating that he would accept the computers only upon conditions that varied from the lease terms. Therefore, based upon this evidence, the jurors could conclude that King Soopers had a reasonable doubt as to its liability in the event the computers were damaged after Underwood took them to inspect them. Thus, the jurors could find that King Soopers' conduct was reasonably justified.

Further, there was testimony that King Soopers arranged for a mutual inspection of the computers several times and that Underwood refused to participate in the mutual inspections.

Therefore, we conclude that instructions 11 and 12 were consistent with the applicable law of conversion and properly instructed the jury. *See Woolsey v. Holiday Health Clubs & Fitness Centers, Inc.*, 820 P.2d 1201 (Colo. App.1991).

### B.

■ We disagree with Underwood's contention that the trial court should have instructed the jury that a presumption of negligence arises when a bailee accepts delivery of property and either fails to return it or returns it in a damaged condition as provided in *CJI–Civ.3d* 16:6 (1989).

Contrary to Underwood's argument, this stock jury instruction does not provide a presumption of conversion, but states conditions that give rise to a presumption of negligence. *See Christensen v. Hoover*, 643 P.2d 525 (Colo.1982) (presumption of negligence arises when bailee cannot redeliver goods or can deliver them only in damaged condition). Underwood was not entitled to a presumption of negligence because he did not assert such a claim, and thus, the proffered instruction was properly refused.

### C.

We also disagree with Underwood's contention that the trial court erred in refusing to instruct the jury that King Soopers' conditioning the return of the computers on Underwood's release of King Soopers from liability amounted to a conversion as a matter of law and that the trial court erred in refusing his tendered jury instruction that contained this standard of strict liability.

■ An otherwise correct judgment will not be reversed for a trial court's refusal to give requested instructions where there was no substantial prejudicial error. *Armentrout v. FMC Corp.*, 842 P.2d 175 (Colo. 1992). Moreover, it is not reversible error to refuse a tendered instruction if the contents of the instruction are already encompassed in other instructions given to the jury. *Woolsey v. Holiday Health Clubs & Fitness Centers, Inc., supra*.

Underwood's tendered instruction provided:

You are instructed that Defendant ... as bailee of the Plaintiff's property, cannot unreasonably condition the return of the Plaintiff's property.

If you find that Defendant ... has refused to redeliver the Plaintiff's property, or has agreed to do so only upon conditions which are unreasonable, then you must find that the Defendant has converted the Plaintiff's property and you must find for the Plaintiff on its claim of breach of bailment contract.

The record shows that the jury instructions adequately and substantially covered King Soopers' liability for conversion. Instruction 9 directed the jury that it must find for Underwood if he proved that King Soopers committed an unauthorized act of dominion or ownership over the computers, that Underwood was entitled to possession of the computers, and that King Soopers refused, after demand by Underwood, to redeliver the computers. In addition, as quoted above in part IA, instruction 11 advised the jury that King Soopers could not refuse to redeliver the property to Underwood without reasonable justification, and if King Soopers agreed to return Underwood's property on conditions that the jury found unreasonable, then the verdict must be for Underwood on his claim of conversion.

Although Underwood insists that his tendered instruction properly instructed the jury, the qualified refusal defense to conversion provided in the Restatement (Second) of Torts §§ 237 and 238 precludes application of the strict liability standard.

King Soopers' request for a release raised the factual question of whether its request was reasonable, thereby affording King Soopers a basis for a qualified refusal to return the computers, or whether its request was unreasonable, thereby rendering King Soopers liable for conversion. Underwood's tendered instruction would have precluded the jury from considering the qualified refusal defense to conversion.

We conclude that instructions 9 and 11, when read together, substantially encompass the contents of Underwood's tendered instruction with the exception of the strict liability standard or the presumption of conversion. Further, because we have concluded that the presumption in *CJI–Civ 3d.* 16:6 (1989) was not applicable, and because it was appropriate to instruct the jury on the affirmative defense of a qualified refusal to return bailed goods, we find no error in the trial court's refusal of Underwood's instruction.

Underwood does not request return of the computers as relief for his conversion claim; therefore, we do not address any ownership issues.

## II.

On cross-appeal, King Soopers claims that the trial court abused its discretion in awarding only half of its requested amount of expert witness fees. We disagree.

King Soopers was entitled to its actual costs under the offer of settlement statute, § 13–17–202(1)(a)(II), C.R.S. (1996 Cum. Supp.). King Soopers requested expert witness fees in the amount of $14,670 for two experts for professional services associated with consulting, deposition, and trial. Underwood objected to the number of hours of trial preparation time for one expert and objected to the second expert's number of hours of compensation requested and hourly rate. Underwood further asserted that the second expert's testimony was duplicative and thus unnecessary. The trial court then awarded $7,335, on the ground that the awarded amount was reasonable in light of the experts' testimony at trial.

A trial court awarding costs under § 13–17–202(1)(a)(II) has the discretion to disallow costs that it finds unreasonable. *Jorgensen v. Heinz,* 847 P.2d 181 (Colo.App. 1992). Generally, discretionary rulings concerning costs may not be reversed on appeal absent an abuse of discretion. *Ballow v. PHICO Insurance Co.,* 878 P.2d 672 (Colo. 1994).

In our view, the trial court did not abuse its discretion in determining the reasonable amount of expert witness fees. Therefore, the award will not be disturbed.

The judgment is affirmed.

CRISWELL and MARQUEZ, JJ., concur.