Brock REDDEN and Patricia Redden,

v.

SCI COLORADO FUNERAL SERVICES, INC., d/b/a Hampden Memorial Gardens, a Colorado corporation.

No. 01SA176.

Supreme Court of Colorado, En Banc.

Dec. 17, 2001.

As Modified on Denial of Rehearing Jan. 14, 2002.

Pearson & Horowitz, P.C., Bruce G. Smith, Robert M. Horowitz, Jane G. Ebisch, Denver, CO, Attorneys for Plaintiff.

Snell & Wilmer, L.L.P., Timothy G. O'Neill, Stephanie J. Quincy, James D. Kilroy, Denver, CO, Attorneys for Defendant.

Justice KOURLIS delivered the Opinion of the Court.

In this case, we address the statutory requirements associated with designating a professional non-party at fault in tort litigation. We conclude that such designation is deficient as a matter of law when it alleges only causation and not all the elements of negligence sufficient to establish legal responsibility. While the professionals consulted pursuant to section 13–20–602(3)(a), 5 C.R.S. (2001), need not necessarily be members of the same profession as the non-party, they must be able to opine competently that the non-party breached an applicable standard of care pursuant to the requirements of paragraph 602(3)(c). The trial court here acted within its discretion in dismissing a non-party designation of a professional that failed to meet these various standards, and we therefore discharge our rule to show cause.

## I.

Brock Redden, Respondent here and plaintiff below, was involved in a vehicle accident with an employee of SCI Colorado Funeral Services, Inc., defendant below and Petitioner here. Redden appeared to suffer no injury in the mishap and drove from the scene under his own volition. Two days later, however, experiencing neck and back pain, he visited Dr. Mark Wolff, a Denver chiropractor. For two consecutive days, Wolff administered various chiropractic treatments targeting Redden's neck and right shoulder. Three days after the last visit Redden suffered a debilitating stroke, the result of a dissection of his carotid artery.

Redden filed a personal injury claim against SCI on September 29th, 2000, for damages resulting from the accident. On December 20, SCI filed a designation with the trial court seeking to identify the chiropractor as a "non-party at fault" under section 13–21–111.5(3)(b), 5 C.R.S. (2001). The designation contained the following assertions:

1. Dr. Mark M. Wolff ... provided a treatment and therapy regimen to Plaintiff.... This treatment involved neck and spinal manipulation, myofacial release and intersegmental traction.... Plaintiff's attending physician could not rule out manipulation by a chiropractor as a cause of the corotid [sic] artery tear and subsequent infarct due to clot formation. Accordingly, Defendant SCI designates Dr. Wolff and Green Mountain Chiropractic as responsible non-parties ... for the reason that the conduct of these non-parties is wholly or partially at fault for Plaintiff's claims, injuries, damages, and losses.

## CERTIFICATE OF REVIEW

The below signed attorney consulted a person who has expertise in the area of the above alleged negligent conduct.

The professional who has been consulted has reviewed the known facts, including such records, documents, and other materials which the professional has found to be relevant (and currently available) to the allegations of negligent conduct and, based on the review of such facts, has concluded that the filing of this Non–Party at Fault designation does not lack substantial justification within the meaning of section 13–17–102(4).

Redden filed a motion to strike the designation as insufficient under the applicable statute, and on April 2, 2001, the trial court granted the motion, ruling the non-party designation "deficient as a matter of law." The court noted that the designation "doesn't tell us anything about Dr. Wolff. It tells us about some ER doctor who cannot rule something out. Now in my opinion that is speculation at this point." Because the trial was then three months away, the court gave SCI just four days to correct the deficiency, in one of two ways. First, SCI could "supplement the designation, setting forth what Dr.

Wolff is alleged to have done to constitute negligence ... and the specialty of the expert that [SCI] conferred with." Alternatively, SCI could submit in camera "the names of the experts, their specialties, their CV's, specifically what each expert reviewed, and specifically their opinions." On opposing counsel's request, the trial judge added that she would like a copy of the "memorializing document" concerning conversations with consulted experts and, absent that, she wanted "the dates on which the conferrals were made."

In response, on April 6th, 2001, SCI submitted a "supplemental designation" stating, "Dr. Wolff ... provided a treatment and therapy regime to Plaintiff Brock Redden.... Dr. Wolff fell below the standard of care in that he should not have administered treatment, manipulation or diagnostic testing" in light of Redden's numerous medical conditions. The supplemental designation continued:

The following discussion identifies facts and circumstances suggesting the causal correlation between chiropractic care and [Redden's] carotid dissection.

1. [Redden's] condition prior to the chiropractic care suggests that the chiropractic care was causally related to his stroke....

....

3.... It is just as likely that the severe jerking of a chiropractic manipulation could have caused a dissection or caused an aggravation of a dissection that would have otherwise healed on its own.

SCI included three medical articles connecting stroke with chiropractic treatment and a "preliminary draft" report and substantial CV of one Dr. John Norris, a neurology and cerebrovascular disease specialist. The report is dated March 29th, 2001, and concludes:

1. Under these circumstances even relatively modest chiropractor manipulation may tear the intima of the artery and so produce dissection. 2. In view of the timing and type of neck manipulation I believe that the chiropractic manipulation is the more probably [sic] factor though some

partial role of the previous accident, cannot be excluded.

Closing the submission, SCI's counsel stated she would proffer additional expert testimony when the expert disclosures were due on April 30th, 2001.

To satisfy both of the trial court's alternatives, SCI also provided a packet of information to the court for in camera review. That submission contained, among other things, the emergency room report noting that the stroke "is possibly related to his minor vehicle accident or manipulation by a chiropractor"; the report of Dr. Bryan Mahan, a cardiovascular and thoracic surgeon, who opined that the "visit to the chiropractor can result in the carotid dissections, particularly if rapid rotational forces are used to (correct) a cervical spinal lesion, as is commonly done"; and statements that counsel had "several discussions" with Dr. Norris "during the month of December, prior to [Redden's] designation of Dr. Wolff." Finally, SCI included several of Redden's medical records.

On April 19th the trial court again ruled the designation deficient, stating:

Neither of the reviewing doctors (Norris or Mahan) is a chiropractor, as is Dr. Wolff. Neither of the reviewing doctors establishes what the standard of chiropractic care is, nor is there sufficient information presented from which the Court can conclude that they were qualified to so opine. Neither of the reviewing doctors opines as to the specific conduct or omission of Dr. Wolff by which he was allegedly negligent. The standard of chiropractic care and breach thereof and is [sic] raised solely through arguments of counsel.

After SCI's supplemental submission, but before the trial court ruled, Redden had submitted a renewed motion to strike the designation. On April 27, 2001, SCI submitted a "Response to Plaintiff's Renewed Motion to Strike and Motion for Reconsideration" in which SCI reasserted the legal arguments in support of the designation and also included, for the first time, an April 19th report by Dr. Blaine Fitzgerald, a chiropractor from South Carolina. Fitzgerald's twelve-page report set forth a detailed analysis of Wolff's failings

in the treatment of Redden. It included several references to "standard of care" and alleged Wolff had clearly fallen below that standard.

On May 10, 2001, the court for the third time denied SCI's designation. Without analysis, the judge determined that SCI had failed to establish "good cause" why she should allow the filing of the amended non-party designation or new certificate of review. Upon this ruling, SCI sought a rule to show cause under C.A.R. 21. We issued such rule, directing Redden to show cause why the trial court rulings were correct.

## II.

■ Colorado Appellate Rule 21 provides this court original jurisdiction to review whether a trial court abused its discretion in circumstances where a remedy on appeal would prove inadequate. *Todd v. Bear Valley Vill. Apartments,* 980 P.2d 973, 975 (Colo. 1999). Here, SCI argues that if the trial court erroneously precluded it from designating Wolff as a non-party defendant, then any outcome of the trial will be inherently flawed.

■ In civil liability cases, Defendants may designate non-parties they contend are "wholly or partially at fault" by giving notice under section 13–21–111.5(3)(b), 5 C.R.S. (2001).

> Negligence or fault of a nonparty may be considered ... if the defending party gives notice ... within ninety days following commencement of the action unless the court determines that a longer period is necessary. The notice shall be given by filing a pleading in the action designating such nonparty and setting forth such nonparty's name and last-known address, ... together with a brief statement of the basis for believing such nonparty to be at fault.... If the designated nonparty is a licensed health care professional and the defendant designating such nonparty alleges professional negligence by such nonparty, the requirements and procedures of section 13–20–602 shall apply.

*Id.* To satisfy these statutory requirements, the defendant in a case such as this must submit to the trial court, within ninety days

of commencement of the action, four things: (1) the non-party's name; (2) the non-party's last-known address; (3) a brief statement of the basis for the non-party's fault; and, (4) since a chiropractor is a licensed health care professional, a Certificate of Review under section 13–20–602, 5 C.R.S. (2001).

## III.

■ Because the first two requirements of the designation statute, name and address, are not in dispute, we begin by examining whether SCI satisfied the third statutory requirement: namely, a brief statement of the basis for fault. Within the ninety-day period required by the statute, SCI filed its first designation. That designation consisted of one paragraph indicating counsel's belief that the chiropractic regimen Wolff performed on Redden was, at least in part, the *cause* of Redden's stroke. The paragraph did not explain, nor attempt to explain, the basis for SCI's contention that Wolff had breached a professional standard of care.

■ The first question before us in this petition, then, is whether a simple statement supporting only "causation" satisfies a statutory requirement of an allegation of "fault or negligence." We hold that it does not. Courts should construe designation requirements strictly to avoid a defendant attributing liability to a non-party from whom the plaintiff cannot recover. *See Thompson v. Colo. & E. R.R. Co.,* 852 P.2d 1328, 1329 (Colo.App.1993); *see also Miller v. Byrne,* 916 P.2d 566, 577 (Colo.App.1995) (ruling non-party designation appropriately stricken because it did not satisfy the element of "duty" in the liability equation, when the General Assembly intended non-party designations to be only for individuals or entities that could be found legally liable.)

■■ In well-settled tort jurisprudence, a claimant alleging negligence of another party must establish the existence of a duty, a breach of that duty, causation, and damages. *Observatory Corp. v. Daly,* 780 P.2d 462, 465 (Colo.1989). Fault is broader than negligence, including, for example, intentional torts, but it likewise implies legal responsibility for the purposes of the designation stat-

ute. *See Slack v. Farmers Ins. Exch.*, 5 P.3d 280, 285 (Colo.2000); *see also Miller*, 916 P.2d at 577.

■ When a claimant levels a negligence or fault claim against a professional, that professional is judged according to the tenets of the field to which he or she belongs. *United Blood Servs. v. Quintana*, 827 P.2d 509, 520 (Colo.1992). The successful claimant will therefore demonstrate that the professional's conduct fell below the standard of care appropriate to the profession. Expert testimony is generally necessary to assist the trier of fact in determining the applicable standards because in most cases such standards are not within the purview of ordinary persons. *Id.* In sum, courts require claimants, as part of a professional negligence claim, to establish the appropriate standard of care.[1]

■ We emphasize that SCI need not *prove* negligence in the submitted designation, but the submission must go beyond bald allegation. *Sandoval v. Archdiocese of Denver*, 8 P.3d 598, 606 (Colo.App.2000) (noting designating party had no need to produce evidence of the claim, only sufficient support for its belief of non-party negligence). A proper non-party designation connects alleged facts with the established elements of negligence.

■ When a court does not believe a defendant has established legal culpability against an alleged non-party, the designation is properly disallowed. On the other hand, a defendant may always attempt to interpose a complete defense that his acts or omissions were not the cause of the plaintiff's injuries. *See Graven v. Vail Assocs., Inc.*, 909 P.2d 514, 520 (Colo.1995). See also *Staley v. Bridgestone/Firestone, Inc.*, 106 F.3d 1504, 1512 (10th Cir. 1997). An intervening cause

only relieves the defendant of liability if it was not reasonably foreseeable. *Webb v. Dessert Seed Co.*, 718 P.2d 1057, 1062-63 (Colo. 1986).[2] A defense that the defendant did not cause the plaintiff's injuries is not equivalent to the designation of a non-party because it cannot result in apportionment of liability, but rather is a complete defense if successful. Our statute is clear that a non-party designation is reserved for individuals or entities who might themselves be at fault and therefore liable for the injury at issue.

■ In summary, we now hold that to satisfy the third element of section 13–21–111.5(3)(b), a party must allege the basis for believing the non-party legally liable to the extent the non-party's acts or omissions would satisfy all the elements of a negligence claim.[3] A designation that alleges only causation is insufficient as a matter of law, and in such circumstances, as here, a trial court's order to strike is proper.

## IV.

■ We turn then to the second amended designation, with accompanying in camera materials. This designation made reference to "standard of care" and alleged that by treating Redden despite his abundant medical afflictions, Wolff had fallen below that standard. The submission set forth substantial alleged facts indicating Wolff "should not have administered" the treatment regimen. Again, however, the submission did not establish the standard of care. The trial court received no information indicating that, within the chiropractic profession, it is improper to treat a patient presenting symptoms like Redden's. We recognize the designation statute requires only a "brief" statement, but that statement must show the non-party can be found legally at fault. The trial court

---

1. Claims against professionals that do not allege a type of professional negligence do not fall under the certificate of review statute. *See, e.g., Martinez v. Badis*, 842 P.2d 245, 249 (Colo.1992); § 13–21–111.5(3)(b), 5 C.R.S. (2001). Such claims do not require a standard of care be established by expert testimony.

2. We recognize that Colorado case law does not absolve tortfeasors of liability when the plaintiff's injuries result from medical treatment reason-

ably sought and directly related to the actions of the original tortfeasor. *Union Supply Co. v. Pust*, 196 Colo. 162, 176, 583 P.2d 276, 286 (1978); Restatement (Second) of Torts § 457 (1965).

3. Of course the defendant designating a non-party does not concede the element of damages in the pleading, and need merely assert that to the extent plaintiff was damaged, the non-party's conduct was a contributing or primary factor.

correctly found that without first establishing the appropriate standard against which to judge Wolff's conduct, a claim of professional negligence could not stand. Thus, even though SCI's second submission went beyond mere causation, we conclude that it too failed to set out the elements of negligence or fault required by section 13–21–111.5(3)(b).

### V.

Furthermore, SCI was laboring under an additional requirement: the need for a certificate of review under section 13–20–602, because SCI alleged negligence against a professional:

(3)(a) A certificate of review shall be executed by the attorney for the plaintiff or complainant *declaring:*

> (I) That the attorney has consulted a person who has expertise in the area of the alleged negligent conduct; and

> (II) That the professional who has been consulted pursuant to subparagraph (I) of this paragraph (a) has reviewed the known facts, including such records, documents, and other materials which the professional has found to be relevant to the allegations of negligent conduct and, based on the review of such facts, has concluded that the filing of the claim, counterclaim, or cross claim *does not lack substantial justification within the meaning of section 13–17–102(4).*

(b) The court, in its discretion, may require the identity of the . . . licensed professional who was consulted pursuant to subparagraph (I) of paragraph (a) of this subsection (3) to be disclosed to the court *and may verify the content of such certificate of review* . . . .

(c) [I]n any action against any other professional . . . [the certificate of review shall declare] that the person consulted can demonstrate by competent evidence that, as a result of training, education, knowledge, and experience, the consultant is competent to express an opinion as to the negligent conduct alleged.

*Id.* (emphasis added). Thus, to fulfil the requirements of this statute, counsel must "declare," (1) that he or she has consulted an expert, (2) that the expert both reviewed the relevant information and concluded that the claim does not lack "substantial justification" as defined elsewhere,[4] and (3) that the person consulted is competent and qualified to opine as to the negligent conduct alleged.

SCI's first "Certificate of Review" was a mere one-paragraph statement that precisely mirrored section 13–20–602(3)(a)(I)–(II), 5 C.R.S. (2001). It failed to declare the competency of the expert consulted, as required by paragraph 602(3)(c). The trial court then correctly sought to verify the content of SCI's certificate as allowed under paragraph 602(3)(b). SCI then made its second submission, including the identification of Dr. Norris, the doctor's CV, and a statement that Norris was consulted at various times in December (prior to the first attempted designation). For in camera review, SCI also submitted, among other things, Dr. Mahan's report and several medical articles.

The statute requires that the certificate of review state the competence of the expert to opine on the alleged negligent conduct. § 13–20–602(3)(c). Nowhere does the statute require the consulted expert to be of precisely the same profession or specialty as the licensed professional against whom the charge is leveled, but paragraph 602(3)(c) does direct trial courts to examine the certificate to assure that it identifies the necessary expertise. The language, "competent to express an opinion *as to the negligent conduct alleged,*" precludes the use of an expert with only general knowledge in the field; rather, a proper expert has a firm grasp on the appropriate standards, techniques and practices within the profession or specialty about which he or she is opining. *Melville v. Southward,* 791 P.2d 383, 388 (Colo.1990) ("Clearly, when a proper foundation establishes that the expert witness, by reasons of knowledge, skill, experience, training, or edu-

---

4. The reference is to an attorney fees statute, section 13–17–102(4), 5 C.R.S. (2001). "As used in this article, 'lacked substantial justification' means substantially frivolous, substantially groundless, or substantially vexatious." *Id.*

cation, is so substantially familiar with the standard of care applicable to the defendant's specialty as to assure the court that any opinion will be as well-informed as the opinion of an expert witness practicing the same specialty as the defendant, the expert witness should be permitted to offer an opinion on the standard of care and on whether the defendant conformed to or deviated from that standard."); *Stoczynski v. Livermore,* 782 P.2d 834, 836 (Colo.App.1989) (holding no abuse of discretion in permitting an osteopathic physician to testify as to the chiropractic standard of care in spinal manipulation when the expert has acquired sufficient expertise through training, education, or experience); *cf. Connelly v. Kortz,* 689 P.2d 728, 729 (Colo.App.1984) (holding no abuse of discretion when trial court disallowed an internal medicine specialist to testify to the standard of care for general surgeons when proposed expert denied having any expertise in surgery or having studied the standards of practice of surgeons in the Denver metropolitan area).

Norris and Mahan, while not chiropractors, were not—as a matter of law—disqualified from opining on chiropractic conduct that amounts to negligence, and to that extent, the trial court erred by so finding. Still, whether they met the requirements of paragraph 602(3)(c) for the purposes of the certificate of review at issue here is a matter of trial court discretion. *See Connelly,* 689 P.2d at 729. Although the trial court was in error in determining, as a matter of law, that the opining experts had to be chiropractors, it would certainly have had discretion to examine their credentials for appropriate knowledge of the conduct at issue.

■ Nonetheless, there is another problem with the submission. Specifically, there is again a failure to show negligence or fault. Only SCI's counsel alleged fault; the doctors consulted did not allege fault, negligence, breach or any misconduct whatsoever. Both experts concluded that the carotid dissection causing Redden's stroke could have been the *result* of the chiropractic care, but neither opined in documents submitted to the court that the chiropractor did anything less than proper, accepted chiropractic procedure.

While we observe that initially the statute requires counsel only to "declare" that an expert has determined a negligence claim has merit, once a court seeks verification, it is incumbent upon counsel to substantiate the certificate by demonstrating that a duly qualified expert does not consider the claim to be without "substantial justification." § 13–20–602(3)(a)(II). This requirement is clear in the statute and serves the seminal purpose of assuring that another professional can express a competent opinion that the non-party was at fault. Again, it is not enough that the other professional state that the non-party may have had a causal relationship to the injury; rather, the other professional must conclude that the non-party was at fault—that it owed the plaintiff a duty, it breached that duty when compared to the standard of care appropriate to the profession, and its breach caused plaintiff's alleged injury.

■ Moreover, SCI's second submission did not contain the "memorializing document" of the declared consultations or their precise dates, as the trial court specifically requested. The "preliminary draft" by Norris bears the date March 29th, 2001, well after the December deadline for non-party designations, indicating it could not truly have been a memorializing document. Therefore, because the second submitted designation omitted the court-requested expert confirmation that the claim against Wolff did not lack substantial justification, and omitted other requested information, we conclude the trial judge's second denial of SCI's submission was within her discretion.

## VI.

■ We arrive now at the final, April 27 submission by SCI. This submission satisfied the statutory requirements on all substantive fronts; its only deficiency relates to timing. It arrived nearly six months after the statutory deadline, and twenty-one days after the court-ordered deadline of April 6. We assume, because the trial court noted in its order that SCI had failed to demonstrate "good cause" for the late filing, that she denied the last submission because it was tardy under section 13–20–602(1)(a). That section specifies a sixty-day deadline that can

be extended if the court "determines that a longer period is necessary for good cause shown." The non-party designation statute itself, section 13–21–111.5(3)(b), also has a deadline, ninety days, which the court may extend if it "determines that a longer period is necessary."

■■■ We review the trial court's ruling for abuse of discretion only. *Shelton v. Penrose/St. Francis Healthcare Sys.*, 984 P.2d 623, 625–27 (Colo.1999). Trial courts have the responsibility of managing their dockets, moving cases toward completion, and assuring that parties comply with deadlines.

Here, the trial court gave SCI an opportunity to supplement its filing, and counsel failed to do so adequately. Indeed, the Fitzgerald document which would finally have satisfied the various statutory requirements bore a date of April 19—months after the original deadlines and two weeks after the court-imposed deadline. SCI made no effort to justify the late filing or support it with specific good cause. At that point, the trial date was some two months hence.

It appears from the record before us that SCI was struggling with the distinction between an allegation that Wolff's treatment constituted an intervening or contributing cause of Redden's injury and an allegation that Wolff was at fault. Not until Fitzgerald became involved did counsel identify the name of a doctor who opined that Wolff was, in fact, legally at fault. As we have noted throughout this opinion, that requirement forms the essence of the interrelationship between the non-party designation statute and the professional certificate of review statute. Only if a professional will so opine may another professional be identified as a non-party.[5] Absent satisfaction of that requirement, the statute dictates the claim shall be dismissed. *See* § 13–20–602(4).

■■ A designation is a pleading invoking Rule 11's reasonable factual investigation requirements. *FDIC v. Isham*, 782 F.Supp. 524, 529 (D.Colo.1992); C.R.C.P. 11. In *Hane ex rel. Jabalera v. Tubman*, 899 P.2d

332 (Colo.App.1995), a dental malpractice action, the defendant filed a motion to dismiss after counsel for a minor plaintiff failed to follow up the complaint with a certificate of review within the statutory sixty days. *Id.* at 334. Despite counsel's admission that the failure was due solely to inadvertence, the trial court denied defendant's motion to dismiss. *Id.* On appeal, the court of appeals accepted the trial court's reliance on *Craig v. Rider*, 651 P.2d 397 (Colo.1982) (adopting a three-prong test for determining "good cause shown" when ruling whether to re-open a default judgment in a probate case), and upheld the ruling. *Id.* at 334–35. Stressing that the goal in resolving "good cause" issues was to promote substantial justice, the *Craig* court concluded that such matters are best left to the sound discretion of the trial court. In exercising its discretion, the court should be guided by three criteria, namely, whether the neglect was excusable; whether the moving party had alleged a meritorious defense or claim; and whether relief from the challenged order would be consistent with equitable considerations. *Id.* at 335.

Applying the *Craig* rationale to the facts at issue here, we conclude that the trial court did not abuse its discretion in refusing to accept the final submission and thereby dismissing the non-party designation. The initial filing gave no notice of how SCI believed Wolff was legally at fault. The second filing similarly focused primarily on causation, at least as far as the expert opinions, and it failed to provide details the court had specifically requested. Given the timing of the filings, the proximity of the trial, and the deference we accord trial court rulings of this nature, we conclude that the trial court was not in error.

## VII.

We therefore discharge the rule to show cause.

---

**5.** Save only, as noted above, if the claim against the non-party professional can be established

without the need for expert testimony.