**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JODY BLATCHLEY; DELFINA
BLATCHLEY,

     Plaintiffs - Appellees,

v.

ST. ANTHONY SUMMIT MEDICAL
CENTER,

     Defendant - Appellant.

No. 18-1231
(D.C. No. 1:15-CV-00460-WYD-NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **EID**, Circuit Judges.
_____

This medical malpractice case is about double recovery.  Plaintiff Jody

Blatchley alleges that he suffered permanent disability because of the negligence of

medical staff while he was receiving care at St. Anthony Summit Medical Center

("SASMC").  After he and his wife Delfina Blatchley (collectively, "the Blatchleys")

filed suit, they settled with the orthopedic surgeons and physician assistants ("PAs")

responsible for Blatchley's care but not with SASMC, which employed his nurses.

SASMC filed a nonparty designation stating that the surgeons and PAs were wholly

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

or partially at fault, thereby alerting the district court that comparative fault would be an issue. The district court struck the designation and did not allow SASMC to amend. At trial, the court refused to instruct the jury on comparative fault, thus allowing the Blatchleys to recover twice for the same harm—from SASMC and from the settling codefendants. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand to the district court.

## I

On March 5, 2013, Blatchley, a coach for the New Zealand national women's snowboarding team, severely fractured his leg while demonstrating a jump. He was transported to SASMC. Over the next few days, he developed acute compartment syndrome ("CS"), a secondary injury caused by the swelling of soft tissue. The swelling causes pressure to build up in closed compartments of the body surrounded by fascia, a non-pliable connective tissue. If pressure increases to the point where blood cannot enter the compartment, the muscles, nerves, and soft tissue in that area do not receive enough oxygen and nutrients, leading to soft tissue death. This is referred to as fulminant CS. Once acute CS becomes fulminant, the condition is full-blown and irreversible. The only intervention—which must be made within approximately six to eight hours of onset—is to perform a fasciotomy, which involves opening the skin and cutting the fascia around the affected compartment to decrease the pressure therein. The medical team responsible for Blatchley failed to diagnose his CS in time to prevent it from becoming fulminant. This case concerns who is liable for that failure.

2

On March 5, Dr. Richard Cunningham performed a tibial plateau surgery on Blatchley's fractured leg. There was testimony at trial that Dr. Cunningham told other medical staff that he performed four compartment fasciotomies at the time of the tibial plateau surgery. But plaintiffs' expert Dr. Robert Pedowitz testified to the contrary that Dr. Cunningham did not perform fasciotomies on Blatchley on March 5. Although the surgery performed by Dr. Cunningham required making an incision of the fascia, the operation was not a fasciotomy because the incision was not a long one, and it was closed at the end of the operation. Dr. Pedowitz also testified that Dr. Cunningham's misleading of the other medical staff led to confusion, but this confusion did not entirely excuse the medical team's failure to diagnose CS in time. In its brief, SASMC emphasizes the consequences of the alleged misinformation and suggests Dr. Cunningham was partially responsible for Blatchley's injuries. The Blatchleys downplay the importance of any misinformation.

After the surgery, SASMC nurses monitored Blatchley for CS symptoms. SASMC stresses evidence from trial of the numerous examinations performed by its nurses. In contrast, the Blatchleys emphasize evidence that the nurses did not provide quality care, including one nurse's testimony that he copied verbatim notes from the prior shift into records he prepared.

On the afternoon of March 7, Dr. John Elton performed calcaneal surgery on Blatchley's right heel. Before, during, and after surgery, Dr. Elton examined Blatchley's left leg and concluded he did not have CS. In a post-operative report, Dr. Elton's PA, Molly Bryan, ordered close observation of Blatchley for symptoms of

3

CS.  Bryan had also noted earlier that day that Blatchley was able to wiggle all the toes of his left foot.

Steven Plante was the nurse in charge of Blatchley that night.  He did not read all of Bryan's order, and he did not check on Blatchley every hour, as required.  Instead, Plante observed Blatchley only three times over the course of his twelve-hour shift, and his notes from those observations are copied verbatim from notes taken during prior shifts that day.

According to Dr. Pedowitz, the period spanning from the conclusion of the calcaneal surgery to the following morning was the critical period before Blatchley's CS became irreversible.  Plante testified that there was no change in Blatchley's condition during his shift.  But when Annadane Dayton, another SASMC nurse, arrived at 7 a.m. the next morning, she immediately determined that Blatchley could not move his ankle.  She contacted Dr. Peter Janes, who assessed Blatchley and decided against diagnosing him with CS because he had soft compartments and no pain when the area was passively stretched.

From March 8 to 11, the physicians and PAs continued to examine Blatchley.  They documented that he had extreme pain—a pain level of at least eight out of ten—in his left leg and right foot at several points during that time but concluded that he did not have CS.  Blatchley's CS was finally diagnosed on March 11, and he underwent fasciotomies that day.  But by that point, his CS had become fulminant and irreversible.  He is now permanently disabled and suffers from ongoing pain.

4

In 2015, Blatchley and his wife sued the following defendants involved in Blatchley's care: the physicians, including Drs. Cunningham and Janes; several PAs; the PAs' medical group; and SASMC, which employed the nurses. The Blatchleys claimed that Blatchley's injuries resulted from defendants' negligence. Eventually, after settling with some defendants, they stipulated to the dismissal of all defendants except SASMC. SASMC filed a designation of nonparties pursuant to Colo. Rev. Stat. § 13-21-111.5(3), designating Drs. Cunningham and Janes, the PAs, and the PAs' group as nonparties wholly or partially at fault. It then amended the designation to remove the PAs' group.

The Blatchleys moved to strike the designation as defective, arguing SASMC failed to meet the requirements of a filing under § 13-21-111.5(3). The court granted the motion at an oral hearing. It explained its conclusion that the designation did not meet the notice requirements for designation of a nonparty set forth in <u>Redden v. SCI Colorado Funeral Services</u>, 38 P.3d 75 (Colo. 2001). When SASMC stated that it intended to file an amended designation complying with the requirements as explained by the court, the court responded that it was not "fundamentally fair or right" to allow amendment because "the law is self-evident as to what is required." SASMC filed a second amended designation providing more information about the basis for its assertion that the designated defendants were liable. The court struck the second amended designation, concluding SASMC was not entitled to a "second bite at the apple."

5

At trial, the jury found SASMC liable and awarded $6.333 million in damages. SASMC then filed several post-trial motions. Only its motion for a new trial under Federal Rule of Civil Procedure 59(a) is relevant to the issues we address on appeal. In that motion, SASMC challenged the court's decision to strike its designations and to preclude the jury from allocating fault to the defendants that settled. The court denied the motion, concluding it had not erred with respect to the designations, and as a result, SASMC was not entitled to a jury instruction on apportionment of fault. SASMC timely appealed.

## II

SASMC argues that the district court erred by concluding that SASMC was required to designate the settling physicians as nonparties at fault under § 13-21-111.5 and by striking SASMC's nonparty designations. Because this case sounds in diversity and this dispute arose in Colorado, we apply substantive Colorado law. See Pehle v. Farm Bureau Life Ins. Co., 397 F.3d 897, 900 (10th Cir. 2005) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).

## A

We first address the standard of review. The parties cite Pedge v. RM Holdings Inc., 75 P.3d 1126, 1128 (Colo. App. 2002), for the proposition that the sufficiency of a defendant's nonparty designation is reviewed de novo. However, we conclude that federal law, not state law, governs the standard of review in this case. SASMC does not directly appeal the district court's order striking its nonparty designation; rather, its Notice of Appeal makes clear that it appeals the order denying

6

its Rule 59(a) motion for a new trial. We have held that in a diversity case, "federal law provides the standards for reviewing the grant or denial of a . . . [motion for] a new trial." Romero v. Int'l Harvester Co., 979 F.2d 1444, 1449 (10th Cir. 1992); cf. Flood v. ClearOne Commc'ns, Inc., 618 F.3d 1110, 1117 (10th Cir. 2010) ("[F]ederal law governs the procedural questions when a preliminary injunction may issue and what standards of review we apply."); Foster v. Alliedsignal, Inc., 293 F.3d 1187, 1194-95 (10th Cir. 2002) ("[A] federal court sitting in diversity will be guided by federal-law standards governing summary judgment procedure."); accord Alison H. v. Byard, 163 F.3d 2, 4 (1st Cir. 1998) ("Because the standard of review is a procedural matter, not a substantive one, we are bound by federal law.").[1]

Under federal law, "[w]e review the district court's decision to grant or deny a new trial motion under an abuse of discretion standard." Weese v. Schukman, 98 F.3d 542, 549 (10th Cir. 1996). "[W]e will reverse the court's decision only if we have a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Mayhue v. St. Francis Hosp. of Wichita, Inc., 969 F.2d 919, 922 (10th Cir. 1992) (quotation omitted). "A new trial cannot be granted unless the error was prejudicial and affects the party's substantial rights." Henning v. Union Pac. R.R. Co., 530 F.3d 1206, 1217 (10th Cir. 2008). "[W]hen the district court's decision turns on an issue

---

[1] The parties disagree about the standard of review under Colorado law in reviewing the district court's refusal to permit SASMC to amend its designation. Because we conclude that federal law provides the standard of review, we need not address this issue.

of law, we review the district court's determination on that question de novo."

Weese, 98 F.3d at 549; see also Henning, 530 F.3d at 1217 ("A district court abuses

its discretion when it bases its ruling on an erroneous view of the law.").

In this case, the district court based its denial of SASMC's new trial motion on

its interpretation of § 13-21-111.5. We review this legal determination de novo.

**B**

The Colorado nonparty designation statute provides:

> In an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss . . . .

§ 13-21-111.5(1). The statute sets forth the following procedure for notifying the

court of a designation:

> Negligence or fault of a nonparty may be considered if the claimant entered into a settlement agreement with the nonparty or if the defending party gives notice that a nonparty was wholly or partially at fault within ninety days following commencement of the action unless the court determines that a longer period is necessary. The notice shall be given by filing a pleading in the action designating such nonparty and setting forth such nonparty's name and last-known address, or the best identification of such nonparty which is possible under the circumstances, together with a brief statement of the basis for believing such nonparty to be at fault.

§ 13-21-111.5(3)(b).

In Redden, the Colorado Supreme Court further explained the requirement that

a notice under § 13-21-111.5(3)(b) contain a brief statement of the basis for fault. It

stated that a notice "need not prove negligence in the submitted designation, but the

8

submission must go beyond bald allegation." 38 P.3d at 81. "[A] party must allege the basis for believing the non-party legally liable to the extent the non-party's acts or omissions would satisfy all the elements of a negligence claim. A designation that alleges only causation is insufficient as a matter of law . . . ." Id. (footnote omitted). Redden, however, dealt with the designation of a nonparty that was never a party to the action, not with the designation of a codefendant with whom the plaintiff has settled.

## C

We turn to whether § 13-21-111.5(3)(b) requires a defendant to file a nonparty designation in compliance with Redden in order for the factfinder to consider the negligence or fault of a settling codefendant. Because the Colorado Supreme Court has not directly addressed this issue, we must make an Erie-guess as to how the Colorado Supreme Court would rule. See Pehle, 397 F.3d at 901. "We are free to consider all resources available, including decisions of [Colorado] Courts and the general trend of authority." Id. at 901-02 (quotation and alterations omitted).

Under Colorado law, the "primary goal" of interpreting a statute "is to give effect to the intent of the legislature." Am. Fam. Mut. Ins. Co. v. Barriga, 418 P.3d 1181, 1183 (Colo. 2018). "Our starting point is the statutory text and we give that text its plain and ordinary meaning." Id. The Colorado nonparty designation statute provides that a nonparty's fault "may be considered if the claimant entered into a settlement agreement with the nonparty or if the defending party gives notice that a nonparty was wholly or partially at fault . . . ." § 13-21-111.5(3)(b) (emphasis

9

added).  It then lays out the requirements for the notice, which were further explained in Redden.

"[W]hen the word 'or' is used in a statute, it is presumed to be used in the disjunctive sense, unless legislative intent is clearly to the contrary."  Armintrout v. People, 864 P.2d 576, 581 (Colo. 1993); see also Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise . . . .").  Section 13-21-111.5(3)(b) allows a court to consider a nonparty's fault either if the nonparty settled with the plaintiff or if the defendant gives notice compliant with the requirements set forth in the statute.  Under the plain meaning of the statutory text, because SASMC's codefendants settled with the Blatchleys, the court may consider the codefendants' fault.  Thus, SASMC was not required to file a notice fulfilling the requirements laid out in § 13-21-111.5(3)(b) and further explained in Redden.

The Colorado Court of Appeals addressed the designation of a codefendant who had settled in Montoya v. Grease Monkey Holding Corp., 883 P.2d 486 (Colo. App. 1994), as modified on denial of reh'g (Mar. 10, 1994), aff'd sub nom. Grease Monkey Int'l, Inc. v. Montoya, 904 P.2d 468 (Colo. 1995).  In that case, the plaintiffs brought claims for fraud and misrepresentation against a corporation and several of its officers.  Id. at 489.  The plaintiffs settled with the officers before trial.  Id.  The defendant corporation did not designate its officers as being at fault under § 13-21-111.5; instead, it waited until after the trial court entered judgment to invoke the

10

statute.  Id.  The Colorado Court of Appeals held that "once [the officers] entered

into settlement agreements with the plaintiffs, [the defendant corporation]'s trial

counsel should have invoked the provisions of § 13-21-111.5, alerting the court that

the proportionate fault of these individuals would be an issue when the judgment was

rendered."  Id.  The court concluded that "the language of this statute does not

accommodate post-trial motions to apportion fault among defendants and non-

parties" and held that the defendant "d[id] not have rights under § 13-21-111.5."  Id.

at 489-90.

Notably, the Montoya court did not hold that the defendant was required to

comply with the notice requirements set forth in the statute.  Rather, it stated that the

defendant "should have invoked the provisions of § 13-21-111.5."  Id. at 489.  Unlike

in this case, the defendant in Montoya did not invoke the statute until after trial.  The

appellate court held that this invocation was too late but did not specify the form that

a timely invocation must take.  The parties do not cite, and we are not aware of, any

Colorado appellate court decision addressing what a defendant must do to invoke

§ 13-21-111.5 after a codefendant settles.[2]  In the absence of an instruction to do so,

we will not read into the statute a requirement that after a codefendant settles, a

defendant must file a notice complying with Redden.  To do so would directly

---

[2] The district court relied on Montoya to determine that § 13-21-111.5 applies, then cited Redden for the requirements of the notice.  But as we have explained, consistent with the plain language of the statute, Redden applies only to a defendant's designation of a nonparty that did not settle with a plaintiff.  The district court's reading is inconsistent with the statutory text.

11

contravene the plain requirements of the statutory text. Rather, we hold that Colorado law requires only that a defendant in such a situation "invoke" § 13-21-111.5. See id. SASMC's first amended designation expressly invoked the provisions of § 13-21-111.5 by citing the statute and identifying the codefendants with whom the Blatchleys had settled. We conclude that the initial designation was sufficient to invoke the statute and give notice to the court of the settlements.[3]

Our holding is consistent with Redden. In explaining the requirements of § 13-21-111.5(3)(b), the Colorado Supreme Court stated that "[c]ourts should construe designation requirements strictly to avoid a defendant attributing liability to a non-party from whom the plaintiff cannot recover." 38 P.3d at 80. It also observed that "the General Assembly intended non-party designations to be only for individuals or entities that could be found legally liable." Id. (citing Miller v. Byrne, 916 P.2d 566, 577 (Colo. App. 1995)). These dicta suggest that a primary reason for the specificity required under § 13-21-111.5(3)(b) is to ensure that defendants do not attribute liability to nonparties from which a plaintiff cannot recover in the future, thereby leaving the plaintiff with insufficient recovery. That policy consideration is not at issue for the designation of a settling codefendant. After a plaintiff has recovered from such a codefendant and waived further claims, there is no risk that

---

[3] Because we conclude that the district court should not have struck the first amended designation, we do not address whether it should have accepted the second amended designation.

12

another defendant's designation of that codefendant would result in any future inability for the plaintiff to recover.

We also note that the district court's holding in this case permitted the Blatchleys to recover the full amount of their damages from SASMC despite the possibility that a jury might have allocated fault to the codefendants that settled. The court's holding contravenes the purpose of § 13-21-111.5(3)(b), which is to "ensure[] that a party that is found liable will not be responsible for more than its fair share of the damages." Stone v. Satriana, 41 P.3d 705, 708-09 (Colo. 2002). The statute "is designed to avoid holding defendants liable for an amount of compensatory damages reflecting more than their respective degrees of fault." B.G.'s, Inc. v. Gross, 23 P.3d 691, 694 (Colo. 2001), as modified (May 21, 2001). But that is precisely what the district court permitted: SASMC was held liable for an amount that may well have reflected more than its degree of fault.

**D**

Our conclusion is consistent with the intent of the Colorado General Assembly, as reflected in the history of § 13-21-111.5(3)(b) and in the broader scheme for tort liability under Colorado law. Traditionally, at Colorado common law, "the release of one joint tortfeasor served to release all other joint tortfeasors." Neves v. Potter, 769 P.2d 1047, 1049 (Colo. 1989) (collecting cases). The rationale for this rule was that a plaintiff had a single cause of action: "[t]he release of one joint tortfeasor was a surrender of the entire cause of action, and resulted in releasing each tortfeasor from liability." Id. at 1050.

13

This rule came "under widespread criticism as yielding results that [we]re harsh, without any rational basis, and very unfair." Id. (quotations omitted). In 1977, the General Assembly enacted the Uniform Contribution Among Tortfeasors Act ("UCATA"). UCATA, ch. 195, § 1, 1977 Colo. Sess. Laws 808 (codified at Colo. Rev. Stat. § 13-50.5-101 et seq.). As originally enacted, UCATA provided that a settlement to one tortfeasor "does not discharge any of the other tortfeasors from liability . . . but it reduces the claim against the others to the extent of" the settlement amount. Id. at 810 (codified at § 13-50.5-105(1)(a)) (amended 1986). UCATA "was drafted with the specific purpose of avoiding the inequities that resulted from adherence to the traditional rule." Neves, 769 P.2d at 1050; see also Kussman v. City & Cty. of Denver, 706 P.2d 776, 779 (Colo. 1985) ("The Act's aim is to ensure that no tortfeasor is compelled to pay more than its appropriate share of the damages as measured by the degree of fault assigned to it by the jury."). It "ensur[es] that a tortfeasor who has not settled will not bear the full burden of damages simply because another tortfeasor has settled." Kussman, 706 P.2d at 779.

In 1986, at the same time that it enacted § 13-21-111.5, the General Assembly amended § 13-50.5-105(1)(a) "to conform with the abrogation of joint and several liability." Smith v. Zufelt, 880 P.2d 1178, 1181 (Colo. 1994); Act of May 16, 1986, ch. 108, § 1, 3, 1986 Colo. Sess. Laws 680, 680-81. As amended, the UCATA provision governing settlements now reads:

> [A] release or a covenant not to sue or not to enforce judgment . . . does
> not discharge any of the other tortfeasors from liability for their several
> pro rata shares of liability . . . ; but it reduces the aggregate claim against

14

the others to the extent of any degree or percentage of fault or negligence attributable by the finder of fact, pursuant to section 13-21-111(2) or (3) or section 13-21-111.5, to the tortfeasor to whom the release or covenant is given.

§ 13-50.5-105(1)(a). Consistent with this amendment, the Colorado Supreme Court has held that if a plaintiff settles with some parties "and trial is subsequently held against non-settling defendants, the trial verdict shall be reduced by an amount equal to the cumulative percentage of fault attributed to the settling nonparties." Smith, 880 P.2d at 1188.

Section 13-50.5-105(1)(a), which deals specifically with settlements, does not include an exception for cases in which the codefendant fails to file a detailed designation. From the legislative history set forth above, we discern that by enacting the tort scheme of which § 13-21-111.5 is a part, the Colorado legislature intended to ensure that after a plaintiff settles with one tortfeasor, the award at trial is reduced by an amount proportionate to that tortfeasor's fault. This avoids the inequitable results of the traditional common law scheme and comports with Colorado's comparative fault regime. We highlight that the General Assembly passed the current version of § 13-50.5-105(1)(a) in the same piece of legislation in which it first enacted § 13-21-111.5. And as we have explained, the text of § 13-21-111.5 includes no requirement that a defendant file a detailed nonparty designation with respect to a settling codefendant. We will not read such a requirement into the statute, particularly in light of the history of these provisions.

15

In summary, we conclude that the district court committed legal error when it interpreted § 13-21-111.5 to require that SASMC provide a notice compliant with Redden. It thus abused its discretion by striking SASMC's first amended designation of nonparties. This abuse of discretion was certainly "prejudicial" and affected SASMC's "substantial rights." Henning, 530 F.3d at 1217. If the court had not struck the designation, SASMC would have been able to present evidence at trial of the settling defendants' negligence. Further, the court would have given a jury instruction consistent with Greenemeier by Redington v. Spencer, 719 P.2d 710, 714 (Colo. 1986), allowing the jury to allocate fault to the settling defendants. Ultimately, the court's error resulted in double recovery for the Blatchleys on the same injuries: once from the settling defendants and once from SASMC.

SASMC also raises a litany of arguments regarding other alleged errors at trial. Because we reverse and remand for further proceedings, we do not reach these arguments. See Hill v. Warsewa, 947 F.3d 1305, 1308 (10th Cir. 2020) (declining to reach other issues because remand required).

### III

For the foregoing reasons, we **REVERSE** and **REMAND** for further proceedings consistent with this decision. SASMC's motion for leave to file certain items in the appellate appendix and its motion for leave to file certain appendix items

16

under seal, both filed on June 4, 2019, are **GRANTED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge

17