25CA0414 Peo in Interest of GV 09-11-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0414
Adams County District Court No. 24JV30080
Honorable Emily Lieberman, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of G.V., a Child,

and Concerning R.V.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Brown and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 11, 2025

---

Heidi Miller, County Attorney, Emily Platt, Assistant County Attorney, Westminster, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1      In this dependency and neglect proceeding, R.V. (father) appeals the juvenile court's judgment adjudicating G.V. (the child) dependent or neglected.  Father's sole contention on appeal is that the court erred by combining his adjudicatory hearing with a hearing on mother's motion for temporary medical decision-making authority.  We disagree, and therefore, affirm.

## I.      Background

¶ 2      In April 2024, the Adams County Department of Human Services received a referral concerning the then-five-year-old child.  The Department learned that the child, who has significant medical needs, had been transported to the hospital after father was taken into custody on multiple warrants.

¶ 3      At that time, the medical professionals discovered that for several months, father had not followed up with medical treatment for the child; specifically, the child was not up to date with his cardiology, pulmonology, surgery, neurology, ophthalmology, and rehabilitation appointments.  The doctors also determined that the child needed surgery on his gastronomy tube and advised against discharging him until the surgery had been performed.  But father did not consent to the surgery.  After father was released from

1

custody, he took the child home from the hospital against medical advice.

¶ 4      The next day, the Department obtained a verbal removal order for the child, who was taken back to the hospital.  At the time of removal, father did not have any of the child's prescribed medications, the right kind of formula to feed him, or the machine required to use his gastronomy tube.

¶ 5      The Department then filed a petition in dependency and neglect alleging concerns about medical neglect.  The juvenile court granted legal custody of the child to the Department, and he was placed with kin.  Thereafter, the child's mother admitted the allegations in the petition and entered into a deferred adjudication agreement.  Father denied the allegations in the petition and requested an adjudicatory hearing, which was ultimately scheduled for November 2024.

¶ 6      Before the adjudicatory hearing, mother moved the juvenile court to grant her sole medical decision-making authority for the child.  The court determined that mother's motion required a hearing and noted that it would authorize the decision-making

2

hearing to be combined with the already-scheduled adjudicatory hearing "if all parties [were] available and in agreement."

¶ 7 The parties appeared for a pretrial conference, and father objected to combining the adjudicatory and decision-making hearings because he believed it would create a confusing appellate record and would allow the juvenile court to consider evidence that was inadmissible for purposes of adjudication. Over father's objection, the court combined the adjudicatory and decision-making hearings.

¶ 8 The juvenile court held the adjudicatory and decision-making hearings simultaneously over the course of three days. The court then issued two written orders — one granting mother's motion for sole medical decision-making authority and another adjudicating the child dependent or neglected pursuant to section 19-3-102(1)(b) and (c), C.R.S. 2025.

## II. Decision to Combine the Adjudicatory and Decision-Making Hearings

¶ 9 Father contends that the juvenile court abused its discretion by combining the adjudicatory and decision-making hearings. He

argues that the adjudicatory judgment should be reversed.  We are not persuaded.

### A.    Applicable Law and Standard of Review

¶ 10    A trial court is obligated to administer justice, control the decorum of the courtroom, and make sure that cases are decided on appropriate grounds.  *Makeen v. Hailey*, 2015 COA 181, ¶ 38.  Trial courts also have the responsibility of managing their dockets, moving cases towards completion, and assuring that the parties comply with deadlines.  *Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 84 (Colo. 2001).  To achieve these ends, trial courts have broad discretion over decisions involving docket and trial management.  *See Makeen,* ¶ 38.

¶ 11    We review a court's decisions related to docket and trial management for an abuse of discretion.  *Id.*; *see also People in Interest of M.W.*, 2022 COA 72, ¶ 12.  A juvenile court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or if it is based on an erroneous understanding or application of law.  *M.W.*, ¶ 12.

## B.    Analysis

¶ 12    Father argues that the juvenile court failed to properly analyze whether consolidating the two hearings was warranted under C.R.C.P. 42.  However, we are not convinced that the juvenile court was required to apply C.R.C.P. 42 in its analysis of whether to combine the adjudicatory and decision-making hearings.  The rule allows a trial court to consolidate "*actions* involving a common question of law or fact [that] are pending before the court" or to hold a joint hearing or trial on any or all the matters in those "*actions.*" C.R.C.P. 42(a) (emphasis added).  But here, there was only one action pending before the court — the dependency and neglect proceeding.  *See In re Marriage of Plank*, 881 P.2d 486, 487 (Colo. App. 1994) (when the term "action" is used with reference to legal proceedings, it should be taken to refer to the proceedings themselves).  And mother's motion for sole medical decision-making authority was simply a request for an order within the dependency and neglect action.  *See id.* (a motion ancillary to the pending proceedings is not an "action"); *see also* C.R.C.P. 7(b)(1) (describing a "motion" as an "application to the court for an order").

¶ 13    Thus, the juvenile court's decision to combine the two hearings was not "consolidation" under C.R.C.P. 42.  Instead, it was a discretionary trial and docket management decision.  And based on our review of the record, the court did not abuse its discretion in making that decision.

¶ 14    First, the juvenile court provided a logical explanation for its decision.  After mother's counsel pointed out that they had made a "very big effort" to subpoena the child's doctor and the hospital social worker, the court found that it "made the most sense" to allow mother to examine those witnesses when they were already scheduled to testify.  The court noted that the witnesses would provide "much of the same testimony" for the adjudicatory hearing and the decision-making hearing.

¶ 15    The juvenile court also stated that it made its decision, in part, based on efficiency.  Although the court did not explicitly cite the Children's Code in its order, the Code's overriding purpose is to protect a child's welfare and safety by providing procedures through which the child's best interests can be served.  *People in Interest of J.G.*, 2021 COA 47, ¶ 19.  To that end, the juvenile court must consider efficiency because it must "proceed with all possible speed

to a legal determination that will serve the best interests of the child." § 19-1-102(1)(c), C.R.S. 2025. And when, as here, a child is under six years old at the time the petition is filed, courts must consider the child's need to be placed in a permanent home "as expeditiously as possible." § 19-1-102(1.6); *see also* § 19-1-123, C.R.S. 2025.

¶ 16 Second, the juvenile court remedied father's specific concerns about its decision to combine the adjudicatory and decision-making hearings. To alleviate his concern that the appellate record would be unclear, the juvenile court expressly delineated, throughout the hearings, which testimony would only be considered for the decision-making hearing and not the adjudicatory hearing. To ensure that it did not consider testimony or evidence that was admitted only for the decision-making hearing, the court kept separate notes for each hearing. It also heard separate closing arguments and issued separate orders on adjudication and decision-making.

¶ 17 Based on the foregoing, we cannot conclude that the juvenile court's decision to combine the adjudicatory and decision-making hearings was manifestly arbitrary, unreasonable, unfair, or based

7

on an erroneous understanding or application of the law. Accordingly, the court did not abuse its discretion by combining the hearings. *See M.W.*, ¶ 12.

### III.   Procedural Due Process

¶ 18    Father next seems to contend that the juvenile court's decision to combine the hearings rendered the proceedings fundamentally unfair, thereby violating his right to procedural due process. To the extent father makes this argument, we discern no reversible error.

### A.   Applicable Law and Standard of Review

¶ 19    To protect a parent's parental liberty interest, due process requires the state to provide fundamentally fair procedures to a parent in a dependency and neglect proceeding. *People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007). A parent may not obtain relief on a due process claim absent a showing of harm or prejudice. *Id.*

¶ 20    We review alleged due process violations de novo. *People in Interest of C.J.*, 2017 COA 157, ¶ 25.

### B.   Analysis

¶ 21    The crux of father's due process argument is that combining the hearings was fundamentally unfair because it allowed the

juvenile court to consider, in its adjudication analysis, evidence that was not admitted for purposes of adjudication. He asserts that the court's findings about his "position on surgery" and "ongoing disagreements with providers" in the months before the adjudicatory hearing show that it considered and relied on evidence admitted only for the decision-making hearing.

¶ 22    However, nothing in the record indicates that the juvenile court relied on evidence admitted only for the decision-making issue in its analysis of whether the child was dependent or neglected. In fact, the court repeatedly stated that it would not consider the evidence admitted only for the decision-making hearing for purposes of adjudication. And, as noted above, the court kept "separate notes and separate documents on the two hearings."

¶ 23    Moreover, the child's doctor testified during the adjudicatory portion of the hearing that the child needed the recommended surgery; that father was angry at medical providers and had verbal disagreements with them; and that father was required to have a chaperone accompany him to the hospital "for recent visits over the past several months." Based on that testimony, the juvenile court could have inferred that, at the time of the adjudicatory hearing,

father still refused to consent to the surgery and continued to disagree with the child's medical providers. And, while mother's counsel elicited similar testimony in relation to the decision-making motion, we presume that the court considered only the evidence admitted in the adjudicatory trial when determining whether the child was dependent or neglected. *See People in Interest of C.O.,* 541 P.2d 330, 332 (Colo. App. 1975) (absent any showing to the contrary, we must presume that a trial court considered only those matters properly before it); *People in Interest of M.M., Jr.,* 215 P.3d 1237, 1249-50 (Colo. App. 2009) (in the context of a bench trial, we presume that the trial court disregards any evidence admitted for an improper purpose).

¶ 24 Even if the juvenile court considered — for the purposes of adjudication — the testimony about father's ongoing refusal to consent to surgery and disagreements with providers that was admitted only for the decision-making hearing, father was not prejudiced. Contrary to father's assertions, that testimony would have been admissible at the adjudicatory hearing because it was relevant to the child's status at the time of adjudication. *See People in Interest of A.E.L.,* 181 P.3d 1186, 1192 (Colo. App. 2008) (an

10

adjudication of dependency or neglect must be based on existing circumstances and related to the child's status at the time of adjudication). Specifically, it was relevant to whether prospective harm existed at the time of the adjudicatory hearing. *See People in Interest of G.E.S.*, 2016 COA 183, ¶ 15 (an adjudication may be based on current, past, or prospective harm); *see also People in Interest of S.N.*, 2014 COA 116, ¶¶ 15-17 (to determine if prospective harm exists, a juvenile court may consider a "parent's past conduct and current circumstances").

¶ 25     Also contrary to father's assertions, the testimony about his ongoing refusal to consent to surgery and disagreements with medical providers was not evidence of allegations that were "outside the scope of the issues raised in the petition." In the petition, the Department alleged that the child lacked proper parental care and was in an injurious environment based on father's failure to provide necessary medical care. Thus, the testimony about these ongoing problems did not inject new issues into the case beyond what was initially alleged; it simply established that the concerns about medical neglect were ongoing.

11

¶ 26 Based on the foregoing, we conclude that the juvenile court's decision to combine the adjudicatory and decision-making hearings did not result in fundamentally unfair proceedings or prejudice father. Accordingly, reversal is not warranted on due process grounds. *See J.A.S.*, 160 P.3d at 262.

IV. Disposition

¶ 27 The judgment is affirmed.

JUDGE BROWN and JUDGE MEIRINK concur.